UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MIGUEL HERNANDEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. C-09-163 |
| | § | |
| ADELAIDE HORN, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

On this day came on to be considered Defendants Adelaide Horn, Jon Weizenbaum, Barry Waller, Denise Geredine, and Iva Benson's motion to dismiss and motion for summary judgment on the affirmative defense of qualified immunity. (D.E. 49.) For the reasons stated herein, the Court DENIES Defendants' motion to dismiss, GRANTS summary judgment as to claims against Weizenbaum, and DENIES summary judgment as to claims against Horn, Waller, Geredine, and Benson. (D.E. 49.)

## I. JURISDICTION

The Court has jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. § 1331 because Plaintiffs bring this suit under 42 U.S.C. § 1983.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Forced fights

Plaintiffs Armando Hernandez, Jr., David P. Hernandez, George Brazil, Angel Jose Mata, and Christopher Norris are developmentally disabled persons committed to the care of the Corpus Christi State School. (D.E. 46, p. 3.) At the Corpus Christi State School, these Plaintiffs were forced to fight other residents. (D.E. 46, p. 4.) These fights were "staged by staff members for their entertainment and videotaped for their amusement." (D.E. 46, p. 4.) During these fights,

Plaintiffs were "punched, kicked, chased, smothered with pillows, wrestled, humiliated, threatened and terrorized." (D.E. 46, p. 5.) Water and "other substance[s]" such as lotion, toothpaste, and shaving cream were thrown on them while they were sleeping. (D.E. 74, Ex. C, p. 2, 12, 19, 26, 42) Plaintiffs were yelled at to "fuck each other up … fight him, fight him … beat him up." (D.E. 74, Ex. C, p. 19, 27.)

Between January 2008 and February 2009, thirteen of these forced fighting incidents were videotaped on a cellular phone. (D.E. 46, p. 6.) Eleven staff members identified on the videotapes were terminated for participating in the incidents or for failing to intervene in these forced fighting incidents. (D.E. 46, p. 6.) The Department of Family and Protective Services investigated the situation and "confirmed numerous allegations of physical abuse, emotional and verbal abuse, neglect, and exploitation." (D.E. 46, p. 6.)

The Corpus Christi State School has approximately 430 beds and cares for developmentally disabled individuals from ages 18 to 72. The Corpus Christi State School is one of the thirteen state schools in Texas for developmentally disabled individuals. (D.E. 46, p. 7.) These state schools are run by the Department of Aging and Disability Services ("DADS"). (D.E. 46, p. 7.) DADS provides services to approximately 5,000 residents across Texas. (D.E. 46, p. 7.)

**B. Professional Defendants**

At the time the forced fights at issue in this case occurred, Adelaide Horn was the Commissioner of DADS; Barry Waller was the Assistant Commissioner, Provider Services of DADS; Jon Weizenbaum was the Deputy Commissioner of DADS, Denise Geredine was the Director of State Schools, and Iva Benson was the Superintendent of Corpus Christi State School. (D.E. 46, p. 2.) Collectively, Horn, Waller, Weizenbaum, Geredine, and Benson constitute the Professional Defendants in this suit.

**C. Prior allegations of abuse**

According to Plaintiffs, the Corpus Christi State School has had a sordid past. Even before the forced fighting incidents had occurred, there were "an enormous number of incidents of injury, abuse, neglect and exploitation." (D.E. 46, p. 13.) Although it has just over 430 beds, the Corpus Christi State School had 1,013 alleged incidents investigated in 2007 and 313 alleged incidents investigated in 2008. (D.E. 46, p. 13-14.) According to Plaintiffs, "[i]t appears that the supervisors took no action in the face of those enormous reported number of incidents." (D.E. 46, p. 14.)

On December 19, 2007, the assistant superintendent of the Corpus Christi State School[1] sent a memorandum to all staff noting the "increase in incidents of horseplay," defined as "provoking others to physically play around, by slapping, touching, kicking, yelling, pulling, pushing, grabbing, throwing objects, running through the home, otherwise asking them to 'playfight', 'slapbox', or roughhouse." (D.E. 46, p. 14.) The memorandum explained that this was "serious behavior" that "tends to escalate to Physical Aggression, which can result in serious injuries." (D.E. 46, p. 14.) During 2007 and 2008, there were reported incidents at the Corpus Christi State School where "a staff member was alleged to have incited one resident to beat another up, or something similar."[2] (D.E. 46, p. 14.) Plaintiffs contend that Professional Defendants Horn, Weizenbaum, Waller, Geredine, and Benson made no changes in policies to address these issues. (D.E. 46, p. 14.)

**D. Texas State School investigations**

There were prior allegations of abuse throughout the Texas State Schools. On March 17, 2005, the Department of Justice ("DOJ") advised Texas Governor Rick Perry of its intent to

[1] The assistant superintendent of the Corpus Christi State School is not a party to this lawsuit.
[2] Similarly, there were three such incidents at the San Angelo State School in 2008 and early 2009 and one such incident at the Mexia State School in 2008.

conduct an investigation of the Lubbock State School under the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997.[3] On December 11, 2006, the DOJ sent Governor Perry a letter stating its findings from the investigation. (D.E. 49, Ex. H, p. 1.) The DOJ found violations of the residents' constitutional right to be protected from harm." (D.E. 46, p. 10.) Later, on March 11, 2008, the DOJ advised Governor Perry of its intent to conduct a CRIPA investigation of the Denton State School. (D.E. 46, p. 11.) On August 20, 2008, the DOJ advised Governor Perry of its intent to conduct a CRIPA investigation of all of the Texas State Schools. (D.E. 46, p. 11.) The DOJ "found numerous violations of the residents' Constitutional rights to protection from harm caused by substantial departures from professional standards [and] provided 'minimal remedial steps' necessary to correct the deficiencies." (D.E. 46, p. 11.)[4]

In June 2009, the DOJ and State of Texas entered into a Settlement Agreement that addressed the remedial measures set forth in the DOJ's Findings Letters. (D.E. 46, p. 11.) The Settlement Agreement was signed by Professional Defendant Adelaide Horn, Commissioner of DADS and Professional Defendant Iva Benson, Superintendent at the Corpus Christi State School. (D.E. 46, p. 11.) "The Agreement noted over 20 deficiencies in the facilities' protection of the residents from harm that were required to be corrected to bring the facilities in line with professional standards." (D.E. 46, p. 11-12.)

**E. Current lawsuit**

Plaintiffs brought suit under 42 U.S.C. § 1983 on the grounds that their constitutional rights to "safe conditions, protection from harm and freedom from bodily restraint" had been

[3] CRIPA "gives the Department of Justice authority to seek relief on behalf of residents of public institutions who have been subjected to a pattern or practice of egregious or flagrant conditions in violation of the Constitution or federal law." (D.E. 49, Ex. H (Dec. 11, 2006 Findings Letter), p. 1)

[4] Additionally, in July 2008, the Texas State Auditor issued a report on conditions at the State Schools from September 1, 2005 to December 31, 2007. (D.E. 46, p. 12.) According to Plaintiffs, the State Auditor criticized DADS for "fail[ing] to timely investigate complaints of serious injury and for using quality assurance reviewers who review their own work." (D.E. 46, p. 12.)

violated by Professional Defendants Horn, Weizenbaum, Waller, Geredine, and Benson, as well as Direct Care Provider Defendants Stephanie Nicole Garza; Timothy Lamont Dixon; Vincent Patrick Johnson; Jesse Salazar; D'Angelo L. Riley; Guadalupe De La Rosa, and Marcos Pena.[5]

Plaintiffs allege that Professional Defendants Horn, Weizenbaum, Waller, Geredine, and Benson departed substantially from their professional standards with respect to inadequate supervision, inadequate security, inadequate incident management, inadequate random walk-throughs, inadequate staffing, inadequate video surveillance, inadequate monitoring of staff, inadequate responses, and inadequate training. (D.E. 46, p. 18.)

On August 3, 2009, Professional Defendants Horn, Weizenbaum, Waller, Geredine, and Benson filed a motion for a Rule 7(a) reply based on Defendants' qualified immunity affirmative defense. (D.E. 7.) Plaintiffs' Fourth Amended Complaint serves as their Rule 7(a) reply. (D.E. 46.) Professional Defendants have now filed a motion to dismiss and motion for summary judgment on the affirmative defense of qualified immunity. (D.E. 49.)

## III. DISCUSSION

### A. Rule 12(c) Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In considering a 12(c) motion for judgment on the pleadings, "the Court must base its decision solely on the pleadings. Such a motion may be granted only if the moving party clearly establishes that no issue of material fact remains to be resolved and that it is entitled to judgment as a matter of law. In reviewing a motion for judgment on the pleadings, a district court must view the facts presented in the light most favorable to, and draw all reasonable inferences in favor

[5] The following Defendants have been dismissed: Kristi Jordan, Patty Ducayet, Teresa Richard, and the Texas Department of Aging and Disability Services.

of, the nonmoving party." Brittan Comm'ns Intern. Corp. v. Southwestern Bell Telephone Co., 177 F.Supp.2d 580, 584 (S.D. Tex. 2001.) (citations omitted.) See also In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) ("The standard for reviewing [a Rule 12(c)] motion is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.") (citations omitted).

To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted).

**B. Rule 56 motion for summary judgment**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

**C. Qualified Immunity**

"To determine whether government officials are entitled to qualified immunity, we apply a two-step test. First, a court must decide whether a plaintiff's allegation, if true, establishes a violation of a clearly established right. Without an established right, qualified immunity is granted. Second, if the plaintiff has alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident." Alexander v. Eeds, 392 F.3d 138, 144 (5th Cir. 2004) (citations omitted).

**D. Whether there was a violation of a clearly established right**

"Determining whether [Plaintiffs] have alleged a violation of a clearly established right involves an application of constitutional standards as they existed at the time of the alleged violation." Alexander v. Eeds, 392 F.3d 138, 144 (5th Cir. 2004). At the time of the alleged forced-fighting incidents, the United States Supreme Court had recognized that mentally retarded persons committed to a state institution have a constitutional right to "safe conditions." Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982). Indeed, a state institution has the "unquestioned duty to provide reasonable safety for all residents and personnel within the institution." Youngberg, 457 U.S. at 324.

**1. Pleadings**

Plaintiffs here allege that while in the custody of the Corpus Christi State School, they were forced to fight with other residents for the entertainment of staff members. (D.E. 46, p. 4.) Plaintiffs have thus alleged a violation of their constitutional right to "safe conditions." Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982). Accordingly, Plaintiffs' allegations, if true, are sufficient to withstand Defendants' motion to dismiss with respect to the first prong of whether there was a violation of a clearly established right.

**2. Evidence**

Plaintiffs have also presented enough evidence to withstand a motion for summary judgment as to whether there was a violation of a clearly established right. Plaintiffs provide the investigative report of abuse describing much of the forced fighting. (D.E. 74, Ex. C.) As reported, some of the direct care providers threw water, toothpaste, lotion, and shaving cream on Plaintiffs while they slept, swore at Plaintiffs to fight each other, smothered Plaintiffs with pillows and "used a cell phone camera to record [the] fighting for [their] own personal amusement." (D.E. 74, Ex. C.) Furthermore, Professional Defendants themselves admit many of

Plaintiffs' factual allegations regarding the forced-fighting activities. Fed. R. Civ. P. 8(b)(6) (D.E. 74, Ex. B, p. 4, "Defendants admit that several direct care staff members coerced and/or forced the Plaintiffs to fight with other residents.") Accordingly, Plaintiffs have submitted sufficient evidence to establish a violation of a clearly established right.

**E. Whether Professional Defendants' conduct was objectively reasonable**

The next issue is whether the Professional Defendants' conduct was "objectively reasonable in light of clearly established law at the time of the incident." Alexander v. Eeds, 392 F.3d 138, 144 (5th Cir. 2004) (citations omitted). The "decisions made by the appropriate professional are entitled to a presumption of correctness." Youngberg, 457 U.S. at 324-25. The Court must "consider an official's conduct to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution." Gates v. Texas Dept of Protective and Regulatory Services, 537 F.3d 404, 419 (5th Cir. 2008) (citing Hampton v. Oktibbeha County Sheriff Dept, 480 F.3d 358, 363 (5th Cir. 2007). Accordingly, "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Youngberg, 457 U.S. at 323.

**1. Pleadings**

Plaintiffs allege that, especially in light of prior incidents of abuse, the Professional Defendants' decisions with respect to supervision, security, and staffing are "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." (D.E. 46.); Youngberg, 457 U.S. at 323. Specifically, Plaintiffs point out that although "institutionalized residents of the State Schools [should] be protected from harm 24 hours a day," at the Corpus Christi State

School, there was no supervision of the direct-care providers after 5 p.m., when the administrators left. (D.E. 46, p. 19-20.) Instead, the Corpus Christi State School "used its direct care providers—some of whom were the perpetrators of the [forced-fighting] incidents—and maintenance as the security after hours." (D.E. 46, p. 20.)

Plaintiffs also contend that Professional Defendants failed to ensure random walk-throughs, failed to require regularly monitored security cameras, and failed to provide an immediate response to reports of serious or unusual incidents. (D.E. 46, p. 23-24.) Plaintiffs point out that the "DOJ found that due to staffing shortages and high turnover, 'the Facilities [including the Corpus Christi State School] cannot adequately identify risks and ensure resident[s'] safety. [The DOJ] found that the frequency and severity of critical incidents at the Facilities are disturbingly high and often directly related to insufficient staffing.'" (D.E. 46, p. 23.) In fact, "[t]he State Auditor noted that there were ten employees that it found 'unemployable' due to a history of abuse, neglect or exploitation." (D.E. 46, p. 24.) Plaintiffs maintain that Defendants failed to "do adequate background checks or monitor [or adequately train] staff." (D.E. 46, p. 24, 25.) Accordingly, Plaintiffs have sufficiently pleaded that Professional Defendants' conduct was not objectively reasonable.

**2. Evidence**

"In the summary judgment context, a government official need only plead qualified immunity, which then shifts the burden to the plaintiff. The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." Gates v. Texas Dept of Protective and Regulatory Services, 537 F.3d 404, 419 (5th Cir. 2008) (citing Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2002)). Thus, in order to withstand Professional Defendants' motion for summary judgment, Plaintiffs must set forth evidence that

presents a genuine issue of material fact as to whether the Professional Defendants' conduct was "objectively reasonable." Lukan v. North Forest ISD, 183 F.3d 342, 346 (5th Cir. 1999) ("[E]ven if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable.")

**a. Professional Defendant Jon Weizenbaum**

In their pleadings and in their response to the Professional Defendants' motion for summary judgment, Plaintiffs offer very little evidence against Defendant Weizenbaum, and none of it establishes that Weizenbaum had supervisory authority over the Corpus Christi State School. In total, Plaintiffs allege as follows with respect to Weizenbaum:

> "Defendant Weizenbaum admitted that when this second set of DOJ findings was issued, whatever reform the agency had done was still not adequate to satisfy the DOJ 'as far as the constitutional rights and the safety of residents at state schools.'" (D.E. 74, p. 5) (citing Ex. Q, at 27-28).
>
> "Defendant Weizenbaum testified that there was 'an obvious breakdown in policies and procedures where something like [the forced-fighting incidents] happen[] … at a state school where residents are supposed to be treated humanely by staff." (D.E. 74, p. 9.) (citing Ex. Q, at 25).
>
> Defendant Weizenbaum "agreed that the Corpus Christi State School had a duty to keep its residents safe 24 hours a day…. He did not disagree with the DOJ findings that the facilities substantially departed from generally accepted standards of care in their failure to protect residents from harm. He did not disagree with the DOJ findings that the problems were systemwide. He also agreed that all of the [forced-fighting] incidents, save one, occurred during the time that the DOJ found serious deficiencies in the facilities' failure to protect residents from harm." (D.E. 74, p. 11) (citing Ex. Q. at 28, 54, and 56).
>
> "Defendant Weizenbaum agreed that the Corpus Christi State School had the duty to make sure that its residents were safe 24 hours a day and that [he would] expect it to be consistent and adequate across the timeline." (D.E. 74, p. 14-15) (citing Ex. Q, at 28-29.)
>
> Defendant Weizenbaum testified that the Texas Legislature "mandated" that video cameras be installed. (D.E. 74, p. 18) (citing Ex. Q, at 32).

None of the above-cited evidence by Plaintiffs establishes that Weizenbaum himself engaged in

conduct that violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Feagley v. Waddill, 868 F.2d 1437, 1439 (5th Cir. 1989) (citations omitted). At most, Weizenbaum's deposition testimony is simply consistent with the claim that some of the supervisors may have engaged in conduct that violated Plaintiffs' constitutional rights. Plaintiffs' conclusory allegation that Weizenbaum, as one of the "supervisors" in this case, is liable for taking "no action in the face of mounting incidents, injuries and abuse" is wholly unsupported to the extent that Plaintiffs have not established that Weizenbaum had any authority to actually take such action. (D.E. 74, p. 13.) Weizenbaum, as Deputy Commissioner of the Department of Aging and Disability Services, oversees three centers: (1) the Center for Policy and Innovation, (2) the Center for Program Coordination, and (3) the Center for Consumer and External affairs. (D.E. 74, Ex. Q, p. 7.) Plaintiffs, as residents of the Corpus Christi State School, are considered "consumers," however, when Weizenbaum was asked whether the Center for Consumer and External affairs "advocate on behalf of consumers at all," he answered: "No. I wouldn't say that advocacy is … part of their duty." (D.E. 74, Ex. Q, p. 18.)

In fact, Plaintiffs have produced no evidence that Weizenbaum's authority or supervisory capacity extended over the Corpus Christi State School, or, indeed, over any of the State Supported Living Centers. On the contrary, the evidence suggests that Weizenbaum held no supervisory role over the State Schools. (D.E. 49, Ex. F, p. 1 Weizenbaum depo.) (wherein Weizenbaum testified: "I am not in the direct 'chain of command' for state supported living centers ("SSLCs") and none of my organizational areas have any supervisory authority over SSLCs, including Corpus Christi SSLC." (D.E. 49, Ex. F, p. 1); See also (D.E. 49, Ex. G, DADS Organizational Chart) (listing Weizenbaum in charge of the Center for Policy and Innovation, the Center for Program Coordination, and the Center for Consumer and External Affairs – all in a separate line of control from the Provider Services chain.)

Accordingly, because Plaintiffs have failed to set forth any evidence that Weizenbaum held a supervisory role over the Corpus Christi State School, they have failed to present a genuine issue of material fact as to whether Weizenbaum was even in a position to make decisions regarding the supervision, security, or staffing at the Corpus Christi State School, much less whether any such conduct was objectively reasonable. Weizenbaum is therefore entitled to summary judgment on the issue of qualified immunity. Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful…. [I]n the light of preexisting law the unlawfulness must be apparent.")

**b. Professional Defendants Adelaide Horn, Barry Waller, Denise Geredine, and Iva Benson**

Unlike Professional Defendant Weizenbaum, Professional Defendants Horn, Waller, Geredine, and Benson each admit that they are all "in the direct line of supervision over the SSLCs [State School Living Centers]" which would include the Corpus Christi State School. (D.E. 49, p. 22.) Further, Professional Defendants Horn, Waller, Geredine and Benson admit that the professional standard of care requires that residents be protected from harm 24 hours a day. (D.E. 43, p. 22, at 69.1.) However, Plaintiffs present evidence that before the forced-fighting incidents came to light in March 2009, the security guards at the Corpus Christi State School did not routinely go inside the buildings after 5 p.m. (D.E. 74, Ex. K, p. 63-64.). Benson, in her deposition, explained "You have your – administrators work 8:00 to 5:00 Monday through Friday, random walk-throughs." After hours, there are no "unit directors, … PST members…, QMRPs, [or] psychologists." (D.E. 74, Ex. K, p. 21.) Professional Defendant Benson agreed that "before this [forced-fighting] incident came to light in March of this year, some of the actual perpetrators were the ones filling out these incident reports." (D.E. 74, Ex. K, p. 25.)

Plaintiffs also present evidence that Professional Defendants Horn, Waller, Geredine, and Benson should have anticipated that more security would be necessary. The forced fighting at the Corpus Christi State School took place from January 2008 to February 2009. During the 2007 fiscal year, however, there were 1,013 allegations and of abuse, neglect and exploitation and 51 confirmed cases at the Corpus Christi State School. (D.E. 74, Ex. N.) Evidently, the Corpus Christi State School had seen enough of an increase of incidents in which residents had been "provoke[ed] to physically play around [or "roughhouse"], by slapping, touching, kicking, yelling, pulling, pushing, [or] grabbing [them]" to warrant the Assistant Superintendent of Programs at the Corpus Christi State School to send notice to "all staff" that there had been an "increase in the incidents of horseplay between residents" and such incidents "will not be tolerated." (D.E. 74, Ex. O.) Also, since 2007, there is evidence that State Representative Abel Herrero had been "demanding security at the Corpus Christi [State School] and was informed that school staff were used as security." (D.E. 74, Ex. G, p. 2.) Representative Herrero claimed that "the number of incidents since 2007 involving abuse, neglect and exploitation should have warranted [more security measures] sooner." (D.E. 74, Ex. G, p. 2.)

Additionally, Professional Defendants Horn, Waller, Geredine, and Benson had each been put on notice of alleged deficiencies at the Corpus Christi State School when the DOJ issued its findings from its statewide CRIPA investigation of the Texas State Schools on December 1, 2008.[6] (D.E. 74, Ex. H.) In its findings, the DOJ stated that "numerous conditions and practices at the Facilities [including the Corpus Christi State School] violates the constitutional and federal statutory rights of their residents. In particular, [the DOJ found] that the Facilities fail to provide their residents with adequate … protection from harm." (D.E. 74, Ex. H, p. 3.) The DOJ

[6] The DOJ announced that it would be conducting a CRIPA investigation of all the Texas State Schools back on August 20, 2008. (D.E. 74, Ex. H, p. 2.)

"[c]orroborat[ed its] assessment" by pointing out "that more than 800 employees across all 13 Facilities have been suspended or fired for abusing facility residents since Fiscal Year 2004."[7] (D.E. 74, Ex. H, p. 5.) Professional Defendant Horn accepted and agreed with the DOJ findings that the Corpus Christi State School was failing to protect its residents from harm. (D.E. 74, Ex. P, p. 13-14; 27-32.) Professional Defendant Benson, in her deposition, admitted that she read the DOJ findings when they came out, and agreed with them. (D.E. 74, Ex. K, p. 45, 47, 75.) Professional Defendant Geredine, in her deposition, agreed that the Corpus Christi State School is aware of allegations made against staff members, and that they therefore "should have been" made aware of allegations of abuse made back in 2007. (D.E. 74, Ex. J, p. 41-42.) Professional Defendant Waller testified that he read the December 1, 2008 findings letter shortly after it came out. (D.E. 74, Ex. R, p. 18.)

In fact, Professional Defendant Waller, when asked whose responsibility it is to make sure that the standard of care at the Corpus Christi State School is met, answered, "I think it's a variety of people. I think management at all levels is responsible." (D.E. 74, Ex. R, p. 70.) Professional Defendant Benson agreed that if the standard of care for residents is not met, any supervisors who knew about it would not be meeting the standard of care. (D.E. 74, Ex. K, p. 75-76)

Supervisory inaction in the face of a "substantial risk of serious harm" in a dormitory situation is "tantamount to simply permitting 'nature to take its course,' which the Supreme Court in Farmer[ v. Brennan, 511 U.S. 825, 833 (1994)] found constitutionally impermissible." Hinojosa v. Johnson, 277 Fed.Appx. 370, 378 (5th Cir. 2008). Thus, Professional Defendants Horn, Waller, Geredine, and Benson's failure to provide adequate security may constitute "such a

[7] Additionally, the DOJ noted that "[i]nadequate investigations make it difficult to identify, develop, and implement corrective measures to eliminate preventable risks to residents. Some Facility investigations are reported, reviewed, and openly discussed in team management meetings. The discussion of allegations and investigations in open meetings deviates from current professional standards." (D.E. 74, Ex. H, p. 18.) The DOJ explained that the Facilities should "[e]nsure that all staff … are trained adequately on processes for reporting abuse and neglect." (D.E. 74, Ex. H, p. 49-50.)

substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [Professional Defendants] actually did not base the decision on such a judgment." Youngberg, 457 U.S. at 323.

"This is not to say that all, or indeed any, of the [four] will ultimately be liable to [Plaintiffs]…. [A]lthough there is sufficient evidence to implicate each, the record does not point unambiguously to a particular individual or individuals. But such uncertainty at this stage is to be expected. Identification of a responsible party or parties within a complex, overlapping chain of command is often a difficult task. Numerous variables must be factored into the analysis: the amount of information known to various defendants; the scope of their duties and authority; their training and expertise; the allocation of decisionmaking power within the organization; reporting and review relationships; established and formal decisionmaking procedures; and informal custom and practice. All of this can be sorted-out…. But, given the complexity of this analysis, [Plaintiffs] should not be penalized at the summary judgment stage for failing to identify precisely which defendant or defendants dropped the ball." Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1149-50 (3d Cir. 1990).

"Admittedly, [Plaintiffs] cast[] a broad net over potentially responsible parties. [Perhaps] [n]ot all [professional] defendants had the authority or responsibility to see that [Plaintiffs receive protection from the forced-fighting activities.]" Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990) (citations omitted). Nonetheless, Plaintiffs have presented sufficient evidence to create a material issue of fact as to whether Professional Defendants Horn, Waller, Geredine, and Benson failed to exercise professional judgment by providing inadequate security at the Corpus Christi State School. (D.E. 46.) The Court may deny a motion for summary judgment based on qualified immunity because "disputed factual issues material to immunity are present." Feagley v. Waddill, 868 F.2d 1437 (5th Cir. 1989.) "Certainly a jury could reasonably find that

the defendants' actions, and particularly their failure to increase … security … constituted a failure to exercise professional judgment." Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1149-50 (3d Cir. 1990). Accordingly, Professional Defendants Horn, Waller, Geredine, and Benson are not entitled to summary judgment on qualified immunity.

**IV. CONCLUSION**

For the reasons stated herein, Defendants' motion to dismiss is DENIED. (D.E. 49.) Defendants' motion for summary judgment on the issue of qualified immunity as to Jon Weizenbaum is GRANTED. (D.E. 49.) Defendants' motion for summary judgment on the issue of qualified immunity as to Adelaide Horn, Barry Waller, Denise Geredine, and Iva Benson is DENIED. (D.E. 49.)

SIGNED and ORDERED this 15th day of April, 2010.

Janis Graham Jack
United States District Judge