UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MIGUEL HERNANDEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. C-09-163 |
| | § | |
| ADELAIDE HORN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING MOTION TO DISMISS

Before the Court is "Defendant Pena's Motion to Dismiss and Motion for Summary Judgment with Brief in Support" (D.E. 104). In the Motion, Defendant Marcos Pena (Pena) seeks dismissal or summary judgment in his favor, arguing that Plaintiffs have not satisfied heightened pleading requirements and that Defendant Pena is entitled to qualified immunity. For the reasons stated below, the Motion is DENIED.

### I. Procedural History

Plaintiffs are developmentally disabled persons committed to the care of the Corpus Christi State School. Defendants in this case include several supervisory persons with jurisdiction over the Corpus Christi State School: Adelaide Horn (Commissioner of the Texas Department of Aging and Disability Services (DADS)); Barry Waller (Assistant Commissioner of DADS-Provider Services); Denice Geredine (Director of State Schools); and Iva Benson (Superintendent of Corpus Christi State School). Those individuals previously sought to dismiss this action against them or to obtain summary judgment based on qualified immunity.

The Court, with the Honorable Janis Graham Jack presiding, denied their joint motion in an Order entered April 15, 2010 (D.E. 79). Since then, the case has been administratively transferred to the undersigned Judge for continued adjudication. D.E. 99. The findings of fact and conclusions of law set out in the previous Order (D.E. 79) are incorporated herein by reference as if set forth verbatim herein. Those findings and conclusions describe the Plaintiffs' rights and the environment in which Defendant Pena acted or failed to act. They are properly considered in this proceeding. Fed. R. Civ. P. 56(c)(3).

## II. Facts Particular to Defendant Marcos Pena

The standard for adjudicating a motion under Federal Rules of Civil Procedure 12(c) and 56 both require that the Court view the facts in the light most favorable to the nonmovants, in this case the Plaintiffs. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). Defendant Pena incorporated by reference the facts set out in the prior Rule 12(c) and 56 motion filed by the other supervisory Defendants.

Defendant Pena was not included in the previous motion and order; he had been added as a Defendant after the other Defendants' summary judgment wheels were in motion. *See* First Amended Complaint, D.E. 29, and Return of Summons, D.E. 33. However, the findings of fact and conclusions of law in the previous Order (D.E. 79) apply equally to Pena, as he is squarely in the line of supervisor-Defendants allegedly responsible for the actions that serve as the basis of Plaintiffs' complaints. In general terms, the existence of supervisory duties and the institutional breach of those duties

found in the previous Order (D.E. 79) have been found for purposes of Pena's Motion.

More specifically, Pena was the Unit Director for the Corpus Christi State School and is a "Professional Defendant," as defined by the previous Order (D.E. 79). According to Pena, his responsibility was for the overall performance of the Tropical Unit (three to four dorms or houses), including the staff and residents involved. Deposition of Marcos Pena, Exhibit U (D.E. 109), pp. 6, 14-15.[1]  His "direct reports," listed as psychologists, qualified mental retardation professionals, nurses, administrative assistant, and individual unit supervisors, reported to him and he was responsible for ensuring that they were properly trained. Ex. U, pp. 19-24.  He chaired the "unit team," which was an interdisciplinary team that met daily to review issues that occurred in the units on a day-to-day basis, including "unusual incidents."  Ex. U, pp. 33-35.

Pena testified that allegations of incidents concerning residents might be discussed without identifying alleged staff perpetrators, but that the unit team would not do any investigation, itself. Ex. U, pp. 41-43, 60-61, 66-69.  Despite his supervisory position, Pena would not interview his own staff members or try to understand the truth of the allegations. Ex. U, pp. 42-43.  He deferred to the "investigative department" and neither ensured that reports were provided to that department nor ensured that any resulting reports were reviewed to understand the outcome of the investigation. Ex. U, p. 52.

If a problem with a staff member were confirmed by the investigative department, the investigative process (not Pena) would determine what happened to the staff member.

---

[1] For greatest specificity, the page number references are to the page numbers of the deposition transcript and not to the condensed page numbering or the Docket Entry page numbering.

Ex. U, p. 70. While he had no recollection of it, Pena did not dispute that, as Unit Director, he received a memorandum in 2007 from Meredith Grantham regarding an increasing number of reports of horseplay involving staff that could lead to violent activities. Ex. U, pp. 111-12. Moreover, all of the Professional Defendants had been put on notice of the alleged deficiencies at the Corpus Christi State School when the DOJ issued its findings from its statewide CRIPA investigation of the Texas State School on December 1, 2008. D.E. 79, pp. 8-9. Still, Pena testified that his Unit Team never discussed any issue regarding staff members inciting residents to engage in fights or other violence. Ex. U, pp. 47, 57-58. That was true even though there was a known report of such an incident in one of his units during his tenure as Unit Director. Ex. U, pp. 75-76.

Despite some evidence of an entire want of effective mechanisms to discover and address the type of violence that is at issue in this case, Pena testified that (1) everyone, including himself, was responsible to make sure that incident reports were made in a fair and effective manner, (2) it was everyone's responsibility, including his, to know as much as humanly possible about what was happening at the facility, and (3) it is everyone's job, including his, to make sure residents are not subjected to violent assaults. Ex. U, pp. 50-51, 95, 99-100. Yet, recognizing that having the alleged staff perpetrators responsible for filling out incident reports in which they were personally involved calls for self-incrimination and might well lead to under-reporting of such incidents, he never questioned the practice. Ex. U, pp. 49, 51, 98-99.

Direct care providers would end up being designated as supervisors when other supervisory staff was not available—when the facility was understaffed. Ex. U, pp. 121-

23. Pena did not remember ever asking his superiors for additional staff to maintain the level of resident supervision necessary. Ex. U, pp. 45-46. In Pena's opinion, the "fight club" evidence triggered a need for additional supervisory personnel, but he would not say that the system of allowing direct care providers to be supervisors was a bad idea. Ex. U, pp. 124-25. Additionally, Pena did not know why there were no video cameras to monitor his units and never, himself, asked for the installation of such a security camera. Ex. U, p. 54, 110. Like the other Professional Defendants, Pena is alleged to have made no changes in policies at his Unit of the Corpus Christi State School to address a high number of incidents of serious behavior and physical aggression, resulting in serious injuries. D.E. 108.

With respect to Pena's qualified immunity defense, Plaintiffs have alleged a violation of a clearly established right. D.E.79, pp. 8-9. The only question is whether Defendant Pena's conduct was "objectively reasonable." As was the case with the other Professional Defendants, in light of the reports of incidents that were made at the facilities and the duty to provide 24-hour protection for the safety of the residents, there should have been supervision by someone more than the direct care providers after 5 p.m. *Id*. at 9-10. After all, it was the direct care providers who were some of the perpetrators of the violence. *Id*. Spot-checking and other monitoring of the facility was required, but lacking. *Id*. Additionally, screening of employees was found wanting. *Id*.

Summary judgment evidence that is attached to Pena's Motion (but was not included with the motion of the other Professional Defendants) is the sworn declaration of Defendants' expert witness, Catherine Hayes, D.E. 104-2, pp. 2-11. Ms. Hayes opines

that those she refers to as "Defendant Supervisors," which is an undefined term in her statement but presumably includes Pena, acted in a manner consistent with the applicable standard of care. In response, Plaintiffs attach what purports to be a report in letter form from their expert, C. Lynn Morgan. Plaintiff's Exhibit V, D.E. 106-8, pp. 65-72;[2] However, the Morgan "report" is not properly authenticated. It is not even a signed copy. Consequently, it is not proper summary judgment proof. *See generally, Chambers v. Sears Roebuck and Co.*, 428 Fed. Appx. 400, 407-08, 2011 WL 2392359, *5 (5th Cir. 2011) (citing Fed. R. Civ. P. 56, *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000), and *Hunter–Reed v. City of Houston,* 244 F.Supp.2d 733, 745 (S.D. Tex. 2003)).

That said, the Court notes that the Hayes Declaration relies on a number of factual observations that are disputed by other evidence presented to the Court, discussed in the prior Order (D.E. 79), as well as the deposition of Marcos Pena, discussed above. Hayes further recites a number of the opposing expert opinions and engages in factual disputes as to their accuracy. All of this demonstrates that there are disputed issues of material fact precluding summary judgment in favor of Marcos Pena. *See, Ougel v. Amite City Police Dept.*, 352 Fed. Appx. 941, 2009 WL 3698033 (5th Cir. 2009) (fact issue under the totality of the circumstances precludes summary judgment); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135 (3d Cir. 1990) (qualified immunity standard to be applied in civil rights claim against professionals holding a mentally disabled individual is "substantial departure from professional judgment" rather than "deliberate indifference"

---

[2] Page number references are to the Court's docket entry.

and factual dispute precludes summary judgment on qualified immunity).

The pleadings and the summary judgment evidence show that there are fact issues as to whether Defendant Pena's conduct was objectively unreasonable, thereby precluding summary judgment on qualified immunity and further precluding a dismissal of this case. Because a jury could reasonably find that Defendant Pena's actions or failure to act constituted a failure to exercise professional judgment, Pena's motion to dismiss and motion for summary judgment on his qualified immunity defense (D.E. 104) is DENIED.

ORDERED this 2nd day of December, 2011.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE